Daniel D. Maynard, No. 009211
**MAYNARD CRONIN ERICKSON**
**CURRAN & REITER, P.L.C.**
3200 North Central Avenue, Suite 1800
Phoenix, Arizona 85012
(602) 279-8500
dmaynard@mmcec.com
Attorneys for Defendant

MAYNARD CRONIN ERICKSON CURRAN & REITER, P.L.C.
ATTORNEYS AT LAW
3200 NORTH CENTRAL AVENUE • SUITE 1800 • PHOENIX, ARIZONA 85012
TELEPHONE 602.279.8500 • FACSIMILE 602.263.8185

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR 15-00707-PHX-SRB |
| Plaintiff, | **DEFENDANT'S MOTION TO DISMISS THE INDICTMENT OR IN THE ALTERNATIVE SUPPRESS EVIDENCE DUE TO VIOLATIONS OF FRCrP 16** |
| v. | |
| Abdul Malik Abdul Kareem, | |
| Defendant. | |

Defendant Abdul Malik Abdul Kareem ("Mr. Abdul Kareem"), by and through his undersigned counsel, moves for an Order dismissing the superseding indictment, or in the alternative, suppress evidence of Mr. Abdul Kareem's alleged statement made on May 5, 2015. This Motion is based on the attached Memorandum of Points and Authorities and supporting exhibits, the files and records in this case, and any other evidence or argument that may be properly presented to the Court.

### STATEMENT OF FACTS

On May 3, 2015, Mr. Elton Simpson ("Mr. Simpson") and Mr. Nadir Soofi ("Mr. Soofi") attempted an attack at the Draw Mohammad Contest in Garland, Texas and were both killed.

On May 5, 2015, Special Agent Stewart Whitson ("S.A. Whitson") and Task Force Officer Jeff Nash ("TFO Nash") called the Defendant, Mr. Abdul Kareem, into the F.B.I. office located at 21711 North 7th Street in Phoenix in order to interview him regarding the Texas attack.  Like Mr. Simpson and Mr. Soofi, Mr. Abdul Kareem was a practicing Muslim.  Federal law enforcement had previously demonstrated suspicion that Mr. Abdul Kareem was involved in illegal activity when it retained downloads of electronic files contained in Mr. Abdul Kareem's computer which was recovered during an "unrelated" search warrant.

S.A. Whitson and T.F.O. Nash began their interview of Mr. Abdul Kareem at 2:20 p.m. and the duration of the interview is unknown.  The interview occurred at the F.B.I. office and was not recorded.  In lieu of recording the interview in accordance with federal law enforcement policy, S.A. Whitman and T.F.O. Nash authored a four page summary of the interview  (Exhibit 1).  The summary did not document any verbatim statements or objective evidence, rather it only contained the impressions of federal agents.  Further, agents did not author the subjective summary immediately after the interview, rather they did not write the summary until a day after the interview.

The summary does not demonstrate whether or not Mr. Abdul Kareem was advised of his rights nor that he gave his statements voluntarily with awareness of his rights.  Rather than recording an actual advisement and demeanor of Mr. Abdul Kareem, the summary contained a single conclusive statement that "Malik (Mr. Abdul Kareem) voluntarily provided the following information."  Further, Mr. Abdul Kareem has diabetes and frequently suffers from

confusion due to high blood sugar.  It is unascertainable from the summary whether Mr. Abdul Kareem was suffering from these symptoms at the time of the interview and/ or how these symptoms affected him during the interview.

On May 7, 2015, two days after his interview, federal law enforcement began witness interviews regarding Mr. Abdul Kareem.  On May 8, 2015, three days after his interview, federal law enforcement commenced physical surveillance of Mr. Abdul Kareem. Mr. Abdul Kareem was subsequently indicted on June 10, 2015, with charges that included the allegation that he made false statements to federal law enforcement during his unrecorded May 5, 2015 interview.  The contents of the unrecorded interview are the basis for this charge.

Federal law enforcement policy mandates a presumption that federal agents electronically record statements made by individuals in their custody. (See Exhibit 2).  On May 12, 2014, Director Monty Wilkinson issued a memorandum to all federal law enforcement personnel on behalf of Deputy Attorney General James Cole.  (See Exhibit 2).   This memorandum established a presumption that individuals in law enforcement custody be electronically recorded absent circumstances such as refusal by the interviewee, public and national security exception, where recording is not reasonably practicable, or where a "significant and articulable law enforcement purpose requires setting it aside."  (See Exhibit 2).   The policy encourages agents and prosecutors to consider electronic recording in investigative and other circumstances where the presumption does not apply. (See Exhibit 2). This policy supplanted a pre-existing policy which left the decision to record confessions and

- 3 -

witness interviews to the discretion of the Special Agent in Charge of the investigation (S.A.C.) based on enumerated factors (See Exhibit 3).   These factors included whether the interview was to gather evidence for prosecution, whether the defendant's own words and appearance would help rebut doubt about the voluntariness of the confession, whether interview with other subject in the same or related cases have been electronically recorded, and whether mental state is at issue in which case "proof of which would be considerably aided by the defendant's admissions in his own words." (See Exhibit 3).   This policy favored recording of interviews stating, "Supervisors are encouraged to seek permission to record, and S.A.C.'s are encouraged to grant it, whenever it is determined that these objectives will be met."  (See Exhibit 3).

Federal agents conducted several interviews with potential witnesses against Mr. Abdul Kareem.   They conducted a lengthy interview with the confidential informant, which was conducted in his home and videotaped.   They conducted an interview with another witness, which they conducted at his home and audio taped.   They conducted an interview with three juveniles at a law enforcement facility, all of which were videotaped.   They conducted several interviews with a sixth witness, all of which were electronically recorded. Federal agents conducted one interview outside in the open desert and were still able to both video and audio record it. Mr. Abdul Kareem's May 5, 2015, interview in which he allegedly provided a false statement to federal law enforcement and he supposedly gave voluntarily while at the F.B.I. office, is the only significant interview in this case which was not electronically recorded.

Law enforcement did not author an explanation for the failure to record Mr. Abdul

- 4 -

Kareem's May 5, 2015 statement until July 1, 2015, almost a month after he was indicted and almost two months after the unrecorded interview. This alleged explanation was that federal law enforcement agents attempted to record the interview but the recording failed. This explanation was careful to reiterate that the interview was "voluntary" and stated, "Special Agent Whitson, requested technical assistance from an FBI Phoenix technical agent who wired the room for sound and tested the recording device to ensure it was functioning properly" (Exhibit 4). The explanation does not disclose the name of this technical agent. The explanation reports that after the interview, agents discovered that no audio or video was captured but no explanation as to why it took two months to write an explanation. This is the only interview conducted in the course of this investigation in which the audio or visual equipment failed.

Finally, it is of note that Mr. Simpson, the individual Mr. Abdul Kareem is alleged to have conspired with, was charged with providing false statements to federal law enforcement in 2010. Coincidentally, his alleged false statement was not recorded either. At Mr. Simpson's trial, Agent Jeffrey Hebert testified regarding the alleged false statement and contradicted his testimony regarding the same statement at the grand jury. Agent Hebert admitted that his testimony at trial contradicted his testimony at the grand jury stating that he "may have misspoke at the grand jury." (See Exhibit 5). Agent Hebert was unable to accurately recall and testify accurately regarding Mr. Simpson's unrecorded alleged false statement.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     THE INDICTMENT SHOULD BE DISMISSED OR EVIDENCE OF MR. ABDUL KAREEM'S MAY 5, 2015 STATEMENT SHOULD BE SUPPRESSED BECAUSE THE FAILURE TO PRESERVE THE RECORDING OF THE STATEMENT VIOLATES DUE PROCESS.**

The government's failure to disclose material exculpatory evidence violates due process under the Fifth and Fourteenth Amendments. *Brady v. Maryland*, 373 U.S. 83 (1963).  Where the government fails to preserve or destroys evidence that is potentially exculpatory, the right to due process is violated if 1) the exculpatory nature of the item was apparent at the time of destruction or failure to preserve the evidence 2) the defendant would be unable to obtain comparable evidence by other reasonably available means and 3) the government acted in bad faith in destroying and/ or failing to preserve that evidence. *Arizona v. Youngblood,* 388 U.S. 51 (1988); *California v. Trombetta*, 467 U.S. 479 (1984).  Factors to consider in determining whether the government acted permissibly in destroying evidence include whether law enforcement acted in good faith and in accord with normal practices. *Trombetta* 467 U.S. 479, 487.  The Constitutional duty of the government to preserve evidence pertains to evidence that "might be expected to play a significant role it the suspect's defense." *Trombetta*, 467 U.S. 479, 488.   The remedy for the denial of due process in this manner, is the dismissal of the indictment. *Id*.

Here, the government failed to preserve a recording of the Defendant's statement to the F.B.I. which he made on May 5, 2015, two days after the Texas attack.  A large portion of this

interview was exculpatory in that Mr. Abdul Kareem denied any prior knowledge or involvement in the planned attack in Texas. Also, this statement plays a significant role in Mr. Abdul Kareem's defense in that it is the very statement he is charged with making falsely.

Rather than retaining and providing a recording of the interview, the government provided a four page summary of the Defendant's statement. The summary does not indicate how long the interview lasted and was not written until a day after the interview actually took place. The summary does not contain any quotes by Mr. Abdul Kareem or the agents, rather it only reflects the agents' subjective impressions of the interview. As demonstrated by Mr. Simpson's previous case, it is highly probable that federal agents will not recall Mr. Abdul Kareem's actual statements verbatim and are prone to inaccurately testify regarding such statements. Without a recording of these statements, Mr. Kareem has no recourse to show otherwise. It is impossible for Mr. Abdul Kareem's counsel to effectively cross-examine federal agents. Further, the summary is redacted such that important names are unascertainable.

Without a recording of Mr. Abdul Kareem's statements, it is impossible to determine Mr. Abdul Kareem's demeanor during this interview and whether he made his statement voluntarily. Mr. Kareem is diabetic and frequently suffers from confusion due to high blood sugar. The summary does not capture whether Mr. Abdul Kareem was suffering from these symptoms during the interview. The summary does not convey the attendant circumstances establishing Mr. Abdul Kareem's custodial status and whether *Miranda* warnings were required. It appears from the summary that Mr. Abdul Kareem was not given *Miranda* warnings and certainly did

not waive his *Miranda* rights. While the interviewing agents assert in their summary that Mr. Abdul Kareem "voluntarily provided" his statement, he was interviewed at the F.B.I. office and it is impossible to ascertain whether Mr. Abdul Kareem was legally "in custody" requiring that he be provided with and waive his *Miranda* rights. The Court, rather than federal law enforcement agents, should make the determination whether law enforcement abided by the Fifth and Sixth Amendments.

The fact that federal agents did not act in accordance with their policy nor in conformity with their practice in every other custodial interview in this case, demonstrates bad faith. A factor to consider in determining whether the government acted permissibly in destroying or failing to retain evidence is whether law enforcement acted according to their policies. The policy of federal law enforcement implemented on May 12, 2014 established a presumption that interviews of those in custody of federal law enforcement be recorded. Again, without the recording, it is not ascertainable whether Mr. Abdul Kareem was, in fact, in custody despite law enforcement's subjective impression.

The 2014 policy supplants the previous 2006 policy which extended to all witness interviews. The previous policy encourages the recording of interviews and outlines several factors to consider when exercising discretion that are relevant here. A significant relevant factor here is whether the crime has a mental element. The 2006 policy states when deciding whether to record a suspect's statement, agents should consider "if prosecution is anticipated, the type and seriousness of the crime, including in particular, whether the crime has a mental

element (such as knowledge or intent to defraud), *proof of which would be considerably aided by the defendant's admissions in his own words*." (See Exhibit 2 emphasis added).  The F.B.I. policy acknowledges that the defendant's actual words "considerably aid" in proving (and by logical inference disproving) the defendant's state of mind.  Mr. Abdul Kareem is charged with knowingly making a false statement, which weighs heavily in favor of recording that statement under the F.B.I.'s policy.

Further the 2006 policy outlines that when deciding whether to record a witness's statement, agents should consider "whether interviews with other subjects in the same or related cases have been electronically recorded."  Here, federal agents recorded every other significant interview.  They did so even when they did not have the luxury of the technological equipment at the F.B.I. office.  In one of the witness interviews, which they deemed particularly significant, they both video recorded and audio recorded the same interview.  They were able to accomplish this, despite the fact that they conducted the interview out in the open desert.  According to their policy, federal agents should have recorded Mr. Abdul Kareem's exculpatory interview as they recorded every other significant inculpatory interview.  The failure to record the one interview that is most likely to provide exculpatory evidence, demonstrates bad faith on the part of federal law enforcement.

Further, the timing of the explanation for the failure to record Mr. Abdul Kareem's May 5, 2015 interview is suspicious.  Agents did not report their explanation for the failure to record Mr. Abdul Kareem's statement until July 1, 2015 almost two months after the interview and

almost a month after Mr. Abdul Kareem was charged with making a false statement.

All of the attendant circumstances indicate that law enforcement acted in bad faith in failing to preserve a recording of Mr. Abdul Kareem's May 5, 2015 interview.  First, federal agents failed to act according to their policy in favor of recording interviews.  Second, it is suspicious that the failure to act in accordance with this policy was isolated to the one exculpatory interview in the entire case.  Third, it is not logical to believe that the only technical issue with an electronic interview occurred where agents arguably have the most technical resources.   Finally the failure wasn't addressed for two months.  All these factors taken together indicates that law enforcement acted in bad faith in failing to preserve the recording of Mr. Abdul Kareem's May 5, 2015.  As such, the indictment should be dismissed or in the alternative, evidence of the interview should be suppressed.

## I.   EVIDENCE OF MR. ABDUL KAREEM'S MAY 5, 2015 STATEMENT SHOULD BE SUPPRESSED PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 16

Federal Rule of Criminal Procedure 16(a)(1)(A) requires that the government disclose to the defendant "the substance of any relevant oral statement made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a government agent if the government intends to use the statement at trial."  U.S.C.S. Fed. Rule Crim. Proc. R. 16(a)(1)(A).  The government must provide Defendant  through his or her attorney written notice of "any and all written or oral confessions, admissions or statements of the Defendant which the government intends to use during the course of the trial."  U.S.C.S. Fed. Rule Crim.

Proc. R. 16.1.  Should the government fail to comply, the Court may "prohibit that party from introducing the undisclosed evidence."  Fed. Rule. Crim. P. 16(d)(2)(C).

Here, the government has not adequately disclosed the Defendant's statement made in response to questioning by federal agents on May 5, 2015.  While the government recorded every other important interview in this case, the government did not record this interview and is only able to provide a subjective summary of the interview.  Without a recording of the interview, it is not ascertainable whether the interview was, in fact voluntary, as the agents assert in their summary.  There is no record of the Defendant's demeanor or the words used by the agents or the Defendant.  This renders an effective cross examination of the agents impossible.  Absent a recording of the Defendant's statement, the Defendant is left at the mercy of the agents' memories and subjectivity.  As Mr. Simpson's 2010 case demonstrates, this leaves the Defendant vulnerable where an agent "misspeaks" and testifies inaccurately with no recourse to prove otherwise.

Because the government cannot provide the full substance of Mr. Abdul Kareem's May 5, 2015 statement, evidence of this statement should be suppressed.

## CONCLUSION

For the foregoing reasons Mr. Abdul Malik Abdul Kareem respectfully requests that the Court dismiss the indictment or in the alternative, suppress all evidence of the May 5, 2015 interview.

RESPECTFULLY SUBMITTED this 28th day of September, 2015.

**MAYNARD CRONIN ERICKSON CURRAN & REITER, P.L.C.**

By  /s/Daniel D. Maynard
    Daniel D. Maynard
    3200 North Central Ave., Suite 1800
    Phoenix, Arizona 85012
    Attorneys for Defendant

**ORIGINAL** of the foregoing e-filed this 28th day of September, 2015 via ECF with:

Clerk of the Court
United States District Court
401 W. Washington
Phoenix, AZ 85003

**COPY** of the foregoing e-delivered this 28th day of September, 2015 via ECF to:

Kristen Brook
Joseph E. Koehler
US Attorneys Office
2 Renaissance Square
40 N. Central Ave., Ste. 1200
Phoenix, AZ 85004-4408
Attorneys for Plaintiff


By  /s/G. Sipe

- 12 -