Daniel D. Maynard, No. 009211
**MAYNARD CRONIN ERICKSON**
**CURRAN & REITER, P.L.C.**
3200 North Central Avenue, Suite 1800
Phoenix, Arizona 85012
(602) 279-8500

Attorneys for Defendant

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No.  CR 15-00707-PHX-SRB |
| Plaintiff, | **DEFENDANT'S MOTION TO SUPPRESS EVIDENCE UNLAWFULLY OBTAINED** |
| v. | |
| Abdul Malik Abdul Kareem, | |
| Defendant. | |

Defendant, Abdul Malik Abdul Kareem ("Mr. Abdul Kareem"), by and through undersigned counsel, hereby files his Motion to Suppress Evidence Unlawfully Obtained. This Motion is supported by the attached Memorandum of Points and Authorities, the files and records in this case, and any other evidence or argument that may be properly presented to the Court.

## STATEMENT OF FACTS

On January 13, 2010, Elton Simpson ("Mr. Simpson") was charged with making false statements to the F.B.I. with the sentencing enhancement that those false statements involved international or domestic terrorism (See Ex. 1).  Prior to the indictment, Mr. Simpson was surveilled by the F.B.I. for five years for suspected terrorism related activities.  (See Ex. 2 p. 76-79).  During the course of this investigation, the F.B.I. paid informant, Dabla Deng $132,000 to record thousands of hours of conversations with Mr. Simpson (See Ex. 2, 11:7-12:4 and p. 95:6-8).  At Mr. Simpson's trial, F.B.I. Special Agent Jeffery Hebert testified that federal law enforcement believed Mr. Simpson was part of a terrorist cell that was being formed by Hassan Abu-Jihaad ("Mr. Abu-Jihaad")(See Ex. 2 p. 77:24-78:2).  Mr. Abu-Jihaad

**MAYNARD CRONIN ERICKSON CURRAN & REITER, P.L.C.**
ATTORNEYS AT LAW
3200 NORTH CENTRAL AVENUE • SUITE 1800 • PHOENIX, ARIZONA 85012
TELEPHONE 602.279.8500 • FACSIMILE 602.263.8185

had been convicted of disclosing national defense secrets in 2008 and sentenced to 10 years in prison. Agent Hebert testified that "the investigation was initiated against Mr. Simpson because we had reason to believe that Mr. Abu-Jihaad was in the process of attempting to set up a terrorist cell in Arizona. We feared that Mr. Simpson was part of that cell." (See Ex. 2 p. 77:24-78:2). On March 14, 2011, Mr. Simpson was found guilty of making a false statement to the FBI but not the sentencing enhancement that the statement was made involving terrorism (See Ex. 3). Mr. Simpson was sentenced to three years of probation (See Ex. 4).

After Mr. Simpson's trial, federal law enforcement interviewed Mr. Abdul Kareem and Mr. Abubakar Hussein Ahmed ("Mr. Ahmed") as part of a terrorist related investigation (See Ex. 5). Like Mr. Simpson, Mr. Abdul Kareem and Mr. Ahmed were practicing Muslims (See Ex. 5). Mr. Ahmed was interviewed in his home by law enforcement on November 30, 2011 (See Ex. 5 ¶¶ 3 and 4). They requested Mr. Hussein contact Mr. Abdul Kareem to meet them at the residence to speak with them (See Ex. 5). Mr. Abdul Kareem did go to Mr. Ahmed's home to meet with federal agents and Mr. Hussein and Mr. Abdul Kareem were interviewed separately (See Ex. 5). Federal agents inquired as to whether they knew the names of people who had plans to harm anyone and offered them money for information to this effect (See Ex. 5). During the interview, an agent took particular interest in Mr. Ahmed's laptop. He requested Mr. Ahmed confirm his ownership of it and was able to recognize that laptop over six months later when a search warrant was executed at the same house (See Ex. 5 and Ex. 6, p. 6).

On July 19, 2012, the Honorable Barbara Hamner of the Maricopa County Superior Court signed a search warrant commanding a search of 2419 West Vista Avenue, Apartment 3W, Phoenix, Arizona based on a finding of probable cause to believe that the above residence contained evidence of violations of Arizona Revised Statutes (A.R.S.) 13-2002A.2 (Attempted Forgery). (See Ex. 6 p. .1) The warrant was based on a sworn affidavit authored by Corporal Daniel F. Herrmann ("Corporal Herrmann") of the Arizona State University Police Department

(See Ex.6 p.1).

In his affidavit, Corporal Herrmann swore that on or about June 26, 2012, Mr. Ahmed committed Attempted Forgery, in violation of A.R.S. 13-2002.A.2 and there was probable cause to believe that evidence of this attempted forgery existed within Mr. Ahmed's residence at 2419 West Vista Avenue, Apartment 3W (See Ex. 6 p. 2).  The search warrant described the property and things to be searched for as the following: 1) "Indicia of occupancy, residency, rental and/or owner of the premises . . ." 2) "Written correspondence, records, receipts, notes, applications and other papers relating to the Attempted Forgery" and 3)"Any and all electronic devices, including computers, word processors, and/ or other devices that may be used to view, store, send or receive e-mails . . ." (See Ex. 6 p. 2).

In regards to the electronic evidence to be seized and searched, the search warrant permitted the seizure of electronic devices, however specifically narrowed the parameters of searching these devices by stating, "These items/components must subsequently be processed in a manner to protect the evidentiary value of the storage/processing devices(s) and allow for a *systematic* search of the files/information therein *for evidence of Attempted Forgery*." (emphasis added) (See Ex. 6 p. 5).

The search warrant affidavit specifically alleged that Mr. Ahmed had communicated via e-mail with an individual at a printing services company requesting the forgery of Mr. Ahmed's name on an Arizona State University (A.S.U.) diploma. (See Ex. 6 p. 5).  In his affidavit, Corporal Herrmann swore that on June 26, 2012 at approximately 10:32 p.m., an e-mail was sent from Mr. Ahmed's e-mail address to JFB Desktop Publishing requesting the production of an A.S.U. Bachelor's Degree diploma bearing Mr. Ahmed's name. (See Ex. 6 p. 5)  The e-mail contained an attachment of an A.S.U. Degree diploma bearing another person's name requesting that name be replaced with Mr. Ahmed's name (See Ex. 6 p. 5).

Other than the attempted forgery charge, the search warrant affidavit contained no other information constituting probable cause to search for evidence of any other crime. (See Ex. 6). Law enforcement did not inform the judge of any intent to seek evidence of other crimes, nor did it seek the requisite permission to seek evidence of any other crimes (See Ex. 1). At the time of the service of this warrant, Mr. Simpson and Mr. Abdul Kareem lived at the target residence with Mr. Ahmed (See Ex. 5).

According to his Affidavit, Corporal Herrmann was not only an A.S.U. police officer, but he was assigned to a multi-agency task force with the FBI (See Ex. 6 p. 2). His assigned duties included the investigation of violations of state and federal crimes and he was deputized as a Special Deputy United States Marshal (See Ex. 6 p. 2). Also, the warrant specified that agents assigned to the F.B.I. would be assisting in the search warrant for the alleged attempted forgery of one A.S.U. diploma (See Ex. 6 p. 6). Corporal Herrmann represented there was good cause to permit serving the warrant between 10:00 p.m. and 6:30 a.m., however he did not indicate what that good cause was (See Ex. 6 p. 6). Corporal Herrmann is now participating in the federal investigation of Mr. Abdul Kareem's current case (See Ex. 7 & Ex. 8).

On July 20, 2012 law enforcement officers, including F.B.I. agents, executed the search warrant on Mr. Ahmed, Mr. Abdul Kareem, and Mr. Simpson's home (See Ex. 6 p. 10). During the course of the search warrant, for alleged evidence of attempted forgery of one A.S.U. diploma, a non-violent crime under Arizona State law, law enforcement, including F.B.I. agents caused $1,558.30 of damage to the property during their entry (See Ex. 5 & Ex. 9). Although there was no mention of Mr. Simpson or Mr. Abdul Kareem in the search warrant affidavit, their private room within the residence was searched and their electronic devices were seized (See Ex. 6 & Ex. 6).

After the search warrant was executed, law enforcement officials provided a receipt for property seized on a form entitled "United States Department of Justice Federal Bureau of Investigation Receipt for Property Received/ Returned/ Released/ Seized" despite this allegedly

being a state investigation by A.S.U. police (See Ex. 10).  The receipt indicates that law enforcement seized one laptop and one iPhone from Mr. Ahmed's room and three computers from Mr. Simpson and Mr. Abdul Kareem's room (See Ex. 5 & Ex. 10).

After a search of Mr. Ahmed's entire residence, the search and seizure of four computers, and the infliction of $1,558.30 worth of property damage, Mr. Ahmed was never charged with a single charge (See Ex. 11).

Law enforcement did not return Mr. Simpson and Mr. Abdul Kareem's computers until January of 2014 and the F.B.I. rather than A.S.U. police returned the computers. (See Ex. 12 & Ex. 13).  As of January 15, 2014, the computers were in F.B.I. evidence, not in the possession of the A.S.U. Police Department and it is unclear how long the computers had been in F.B.I. custody. (See Ex. 12 & Ex. 13).  Both Mr. Simpson and Mr. Abdul Kareem retrieved their computers from the F.B.I. Phoenix Division Headquarters from Task Force Officer Jeffrey Nash (T.F.O. Nash), who is now one of the primary investigators in Mr. Abdul Kareem's current case. ( See Ex. 12 & Ex. 13).  Prior to releasing the computers, T.F.O. Nash interviewed Mr. Abdul Kareem and Mr. Simpson regarding the ownership and content of their computers. (See Ex. 12 & 13).   On January 15, 2015, T.F.O. Nash interviewed Mr. Simpson at the F.B.I. Phoenix Division Headquarters. (See Ex. 12).  T.F.O. Nash questioned Mr. Simpson regarding issues of Inspire Magazine that law enforcement had found on Mr. Abdul Kareem's Lenovo laptop.[1]  (See Ex. 12).  On January 23, 2014, T.F.O. Nash interviewed Mr. Abdul Kareem (See Ex. 13).  During this interview, T.F.O. Nash questioned Mr. Abdul Kareem regarding issues of Inspire Magazine on his Lenovo laptop. (See Ex. 13).  Mr. Abdul Kareem was questioned regarding ownership of the flash drive attached to his computer (See Ex. 13).  Even after returning the Lenovo laptop and the attached flash drive to Mr. Abdul Kareem, the F.B.I.

---

[1]   Note that the government's detention brief attributed these files to the external flash drive. (See Ex. 19) While the F.B.I. 302 attributes these files to the Lenovo laptop. (See Ex. 7 & Ex. 8)

retained copies of each hard drive containing every file that had once been on the Lenovo computer and the flash drive (See Ex. 14).   On September 2, 2015, the F.B.I. provided this download of Mr. Abdul Kareem's Lenovo laptop and the attached flash drive to defense counsel in discovery (See Ex. 15).

The F.B.I. retained the download of Mr. Abdul Kareem's entire hard drive and attached flash drive despite having no warrant authorizing them to do so (See Ex. 14).  It was not until May 28, 2015 that federal law enforcement officials obtained a search warrant authorizing them to search an "image copy" of Mr. Abdul Kareem's Lenovo laptop and the attached flash drive for anything other than evidence of forgery. (See Ex. 14).   This was almost three years after the seizure of the Lenovo laptop and attached storage device. (See Exs. 6 and 14).

On June 10, 2015, federal law enforcement executed a search warrant at Mr. Kareem's residence at 13205 N. 21st Pl. Apt. 2 in Phoenix.  (See Ex. 16).  They conducted a searches of both of Mr. Abdul Kareem's vehicles (See Exs. 17 and 18).  Law enforcement did not recover the Lenovo laptop or the attached flash drive in any of those searches (See Exs. 16, 17 and 18). It is only because federal law enforcement obtained electronic evidence within the Lenovo laptop and attached flash drive during the July 20, 2012 search and retained copies of that evidence for nearly three years, that they have that evidence in their possession (See Ex. 14).

While the 2012 search warrant specified that electronic devices seized from the residence were to be systematically searched for *evidence of forgery*, law enforcement retained every file including the following files on a Mr. Abdul Kareem's Lenovo 0768 laptop and a connected flash drive.[2] (See Ex. 19):

1)      GIMF Security and Intelligence Course (recovered from the recycle bin from Lenovo 0768 laptop)

2)      A Treatise on the Legal Status of Using Weapons of Mass Destruction Against

---

[2] Mr. Abdul Kareem denied ownership of the flash drive seized from his Lenovo laptop. (See Ex. 8).

Infidels by Sheikh Nasir Bin Hamad al-Fahd (PDF file seized from Simpson's flash drive)

3) The Rageh Omaar Report - From Minneapolis to Mogadishu (mp4 video file seized from Simpson's flash drive)

4) Training that makes killing civilians acceptable (mp4 video file seized from Simpson's flash drive)

5) Inspire Magazine Issue 8 (mp4 video file seized from Simpson's flash drive)

6) Inspire Magazine Issue 9 (mp4 video file seized from Simpson's flash drive)

7) An article from the extremist website Unjust Medad, "The Ruling on Dispossessing the Disbelievers' Wealth in Dar al-Harb" (file seized from Simpson's flash drive)

The Government now contends that these files recovered pursuant to a search warrant regarding an attempted forgery constitute an "additional significant fact of probative danger" attributed to Mr. Abdul Kareem (See Ex. 19).

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.   OFFICERS CONDUCTED A SEARCH BASED ON A PRETEXT SEARCH WARRANT FLAGRANTLY DISREGARDING THE TERMS OF THE WARRANT THEREFORE ALL EVIDENCE SEIZED FROM THE ELECTRONIC DEVICES SHOULD BE SUPPRESSED.**

**A.   The Wholesale Search of All Files on the Electronic Devices Exceeded the Scope of the Search Warrant Authorizing a Systematic Search for Evidence of Forgery.**

A search warrant may only be issued upon probable cause and must state with particularity the places to be searched and the items to be seized. *U.S. Constitution Amend. IV*. Generally, in searches made pursuant to warrants, only items specifically enumerated in the warrant may be seized. *Stanford v. Texas*, 379 U.S. 476 (1964).

A basic tenant of the Fourth Amendment warrant clause is that police must obtain a warrant from a neutral and disinterested magistrate and must confine their search to what is

authorized by that magistrate.  "The requirement that warrants shall particularly describe the thing to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another."  *Marion v. United States* 275 U.S. 192, 196 (1927).

> The *Fourth* Amendment provides that
>
>> The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated and 'no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and *particularly describing* the place to be searched, and the persons or *things to be seized.*'

(Emphasis supplied).  "These words are precise and clear." *Stanford v. Texas*, 379 U.S. at 509-510 (1964).  They reflect the determination of those who wrote the *Bill of Rights* that the people of this new Nation should forever 'be secure in their persons, houses, papers, and effects' from intrusion and seizure by officers acting under the unbridled authority of a general warrant." *Id.* at 509-510.

"The prohibition against general searches . . . serves primarily as a protection against unjustified intrusions on privacy."  *Horton v. California,* 496 U.S. 128, 141 (1990).  In determining whether or not a search that was conducted was confined to its lawful scope, the Court should consider the purpose disclosed in the application for the warrant and the manner of execution.  *U.S. v. Rettigg* 589 F. 2d 418, 423 (9th Cir. 1978) *citing Vonder Ahe v. Howland*, 508 F.2d 364 (9th Cir. 1975); *United States v. Dubrofsky*, 581 F.2d 208 (9th Cir. 1978).

A search pursuant to a valid warrant may devolve into a general search if officers flagrantly disregard the limitations of the search warrant or act in bad faith. *U.S. v. Rettig*, 589 F.2d 418 (9th Cir. 1978).  The remedy for the flagrant disregard of the terms of a warrant and or a search in bad faith is suppression of all evidence seized during the search, including evidence that would have otherwise been within the scope of the warrant. *Id*.  Even if law enforcement is acting in good faith and exceeds the limitations of the warrant, the remedy is the

suppression of those items that fall outside the scope of the warrant. *United States v. Waller*, 467 U.S. 39, 43 n.3; *U.S. v. Tamura*, 694 F. 2d 591 (9th Cir. 1982). Where officers flagrantly disregard the scope of a warrant, the warrant is transformed into an impermissible general warrant and all items seized during that search should be suppressed. *U.S. v. Rettig*, 589 F.2d 418 (9th Cir. 1978).

Here, law enforcement flagrantly disregarded the terms of the warrant. The search and seizure of Mr. Simpson and Mr. Abdul Kareem's computer and attached flash drive exceeded the scope of the 2012 search warrant. The affidavit requested only to search the residence for evidence of attempted forgery of an Arizona State University diploma. The warrant was limited in scope, authorizing law enforcement to seize electronic devices that "may be used to view, store, send or receive e-mails" and "allow for the *systematic* search of the files/information therein for evidence of *Attempted Forgery.*" (emphasis added). The judge authorized the search warrant based on the information presented in the affidavit and the affidavit contained no other information presenting probable cause to search for evidence of other crimes aside from the attempted forgery.

Rather than conducting the "systematic search" of files contained within electronic devices "which may be used to view, store, send or receive e-mails" for evidence of attempted forgery, it appears that law enforcement conducted a wholesale search of every file in all electronic devices seized from the residence. T.F.O. Nash had recovered issues of Inspire magazine from Mr. Abdul Kareem's Lenovo laptop as of January 15, 2014 (See Ex. 12 & Ex. 13). Federal law enforcement then retained a copy of Mr. Abdul Kareem's entire hard drive and attached flash drive for three years after the Lenovo laptop was seized (See Ex. 14). In doing so, law enforcement officials seized and searched files that had no relevance to attempted forgery of a diploma. Law enforcement retained every file including four video files and three document files clearly labeled as files relating to Islamic issues. (See Ex. 19). The 2012 affidavit did not disclose a single fact supporting probable cause to search for evidence of

Islamic issues, therefore law enforcement was not authorized to search for much less seize such evidence. By failing to limit the scope of the search to what the judge authorized, the search warrant devolved into a general warrant, that is precisely what the Fourth Amendment was designed to prohibit. Accordingly, the evidence of all files searched outside the scope of the warrant should be suppressed.

**B.      The Purported Justification for the Warrant Here Was a Pretext and All of the Electronic Evidence Should Be Suppressed.**

Where the officers so abuse the warrant's authority that an otherwise valid warrant transforms into a general warrant this requires that all fruits be suppressed. *United States v. Tamura,* 694 F.2d 591 (9th Cir. 1981); *U.S. v. Rettig*, 589 F.2d 418 (9th Cir. 1978). A factor in determining whether officers flagrantly disregard the scope of a warrant such that it devolves into a general warrant is whether the officers engage in a pretext search. *U.S. v. Rettig*, 589 F.2d 418 (9th Cir. 1978). In such a case all evidence seized must be suppressed. *Id.*

In *Rettig*, the Federal Agents for the Drug Enforcement Agency (D.E.A.) sought an arrest warrant for the defendant and a search warrant for his residence. *Id.* A federal magistrate issued the arrest warrant but denied the issuance of the search warrant. *Id.* The D.E.A. agents then executed the arrest warrant, entered the residence based on exigent circumstances, and found the Defendant disposing of a pound of marijuana. *Id.* Agents then obtained a search warrant from a state judge, failing to disclose their true purpose was to search for evidence of multiple conspiracies to import cocaine, rather, agents purported to request permission to search to recover evidence of marijuana possession. *Id.* Subsequently, agents seized 2,288 items from the home, a majority of which were written material and did not pertain to marijuana. *Id.*

The Court stated that "[b]y failing to advise the judge of all the material facts, including the purpose of the search and its intended scope, the officers deprived him of the opportunity to exercise meaningful supervision over their conduct and to define the proper limits of the warrant." *U.S. v. Rettigg*, 589 F. 2d 418, 422. "A judicial officer cannot perform the function

of issuing a warrant particularly describing the places to be searched and the things to be seized . . . where the police fail to disclose an intent to conduct a search the purposes and dimensions of which are beyond that set forth in the affidavits." *Id.* at 423.  Further, "[a]n examination of the books, papers, and personal possessions in a suspect's residence is an especially sensitive matter, calling for careful exercise of the magistrates' judicial supervision and control." *Id.* at 422-423 *citing Stanford v. Texas*, 379 U.S. 476, 85 S. Ct. 506 (1965).   Although every item seized or searched need not be described in the warrant, officers must act in good faith towards the objects specified in the warrant. *Id.* at 423.

Here, the search of Mr. Ahmed's residence was a pretext search conducted in bad faith with the true intent to access the computers in the residence so the F.B.I. could search for Islamic and terrorist related materials.  Law enforcement's complete disregard for any limitation of the warrant coupled with their long standing suspicion of Mr. Simpson, Mr. Ahmed and Mr. Abdul Kareem lead to the conclusion that this was a pretext.

Mr. Simpson was a highly sought after target of the F.B.I. on the suspicion of terrorism related charges. Federal law enforcement believed he was part of a terrorist cell that it believed was developing in Arizona.  Through this search warrant, federal law enforcement was able to gain access to his and his believed associates' electronic files.  Prior to the execution of the search warrant, the F.B.I. had spent five years investigating Mr. Simpson and invested $132,000 in payments to an informant to record Mr. Simpson.  Mr. Simpson was convicted only of providing a false statement to the F.B.I. and not the enhancement that his false statement was made in relation to terrorism.  Thus, the F.B.I.'s extensive efforts to investigate Mr. Simpson had failed to produce a successful prosecution.

Mr. Ahmed and Mr. Abdul Kareem were Muslim-Americans and attended the same mosque as Mr. Simpson.  Prior to the application for the warrant for attempted forgery, on November 30, 2011, both Mr. Ahmed and Mr. Abdul Kareem were interviewed on a matter "unrelated" to the alleged forgery.  Mr. Ahmed and Mr. Abdul Kareem were both questioned

about their knowledge of planned terrorist activity and offered money to provide information to federal law enforcement.  During the interview, a law enforcement agent took note of Mr. Ahmed's computer and asked him to confirm ownership of that computer.  At the time of the execution of the search warrant, over six months after the interview, this investigator could still describe the computer.  This computer then became one of the items sought after in the warrant for the attempted forgery. (See Ex. 6 p. 2).

The fact that the warrant was executed by federal law enforcement, rather than state law enforcement, for minor state charges screams that the true purpose behind the search was to gain access to the electronic devices in the residence in order to search for evidence of federal terrorist related charges and not the attempted forgery of one A.S.U. diploma.  The affidavit purporting to request permission to search for the minor charge of attempted forgery of a university diploma under Arizona state law was a sham.  Although the author of the warrant was an officer with the A.S.U. Police Department, he was assigned to a multi-agency task force at the F.B.I..   Subsequently, the F.B.I., rather than a state agency conducted the search of the computers and retained the evidence (See Ex. 7, Ex. 8, Ex. 14 & Ex. 19).

Further, it is of glaring importance that Corporal Herrmann, the author of the 2012 search warrant, is participating in the investigation of Mr. Abdul Kareem as a Task Force Officer in this current case.  This is yet another factor that indicates that the 2012 search warrant was a pretext and not made in good faith.

While the search warrant pertained to a minor non-violent offense, the manner of the execution of the search warrant suggests law enforcement was targeting a more serious and dangerous crime. F.B.I. agents executing the search warrant caused $1,558.30 worth of damage to the residence. (See Ex. 11).  Also, law enforcement stated they had "good cause" to execute night service of the warrant, however did not disclose the "good cause."  (See Ex. 6, p. 6)

Lastly, Mr. Ahmed was not charged with a single crime.  The F.B.I. searched and retained complete copies of all data on all seized electronic data accrediting this data to Mr.

Simpson and Mr. Abdul Kareem, who were never arrested or charged with anything in connection with the warrant.

The fact that the F.B.I. suspected Mr. Simpson, Mr. Abdul Kareem, and Mr. Ahmed of having ties to or information about terrorism, the complete disregard for the scope of the warrant, and the fact that the F.B.I. conducted the search warrant execution, search, and retention of all files indicates this was a pretext search and all evidence from the computers should be suppressed.

**II.    DESPITE THE ISSUANCE OF THE 2015 SEARCH WARRANT FOR THE LENOVO LAPTOP AND ATTACHED STORAGE DEVICE, THE ELECTRONIC EVIDENCE RETAINED WITHIN IS "FRUIT OF THE POISONOUS TREE" AND SHOULD BE SUPPRESSED.**

While federal law enforcement obtain a search warrant in 2015, three years after the search and seizure of the computers, this cannot remedy that the data was seized illegally in bad faith. "It is well settled that evidence seized during an unlawful search cannot constitute proof against the victim of the search." *United States v. Crews*, 502 F.3d 1130, 1135 (9th Cir. 2007) citing *Wong Sun v. United States*, 371 U.S. 471, 484 (1963). In determining whether evidence is "fruit of the poisonous tree", the question is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun v. United States*, 371 U.S. 471, 488.

Here, officers only knew of and obtained the electronic evidence from Mr. Abdul Kareem's Lenova laptop computer and the attached storage device by the illegal search and seizure pursuant to the 2012 search warrant. They did not recover this laptop or attached storage device when they searched Mr. Abdul Kareem's residence at 13205 N. 21st Pl. pursuant to a search warrant obtained on June 10, 2015. (See Ex. 16). It was only because they illegally obtained the laptop and attached storage device during a pretext search and subsequently illegally retained evidence outside the scope of the search warrant that the federal government

has such evidence in their possession in 2015. The fact that they sought a new search warrant for the same evidence that was illegally obtained and searched does not dissipate that taint of that illegality. As such, the evidence is fruit of the poisonous tree and should be suppressed.

### CONCLUSION

For the foregoing reasons Mr. Abdul Malik Abdul Kareem respectfully requests that the content of all electronic files and their titles obtained from the illegal search of his computer and attached storage device be suppressed.

RESPECTFULLY SUBMITTED this 19th day of October, 2015.

**MAYNARD CRONIN ERICKSON
CURRAN & REITER, P.L.C.**


By /s/Daniel D. Maynard
    Daniel D. Maynard
    3200 North Central Avenue, Suite 1800
    Phoenix, Arizona 85012
    Attorney for Defendant

**ORIGINAL** of the foregoing e-filed this 19th day of October, 2015 via ECF with:

Clerk of the Court
United States District Court
401 W. Washington
Phoenix, AZ 85003

**COPY** of the foregoing e-delivered this 19th day of October, 2015 via ECF to:

Kristen Brook
Joseph E. Koehler
US Attorneys Office
2 Renaissance Square
40 N. Central Ave., Ste. 1200
Phoenix, AZ 85004-4408
Attorneys for Plaintiff

  /s/Stacey Tanner