# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

_____

| | |
|---|---|
| United States of America, | ) |
| | ) |
| Plaintiff, | ) |
| | ) **CR15-00707-PHX-SRB(MHB)** |
| vs. | ) Phoenix, Arizona |
| | ) August 12, 2015 |
| Abdul Malik Abdul Kareem, | ) 3:30 p.m. |
| | ) |
| Defendant. | ) |
| | ) |
| _____ | ) |

### BEFORE:  THE HONORABLE SUSAN R. BOLTON, JUDGE

### REPORTER'S TRANSCRIPT OF PROCEEDINGS

### SCHEDULING CONFERENCE

**APPEARANCES:**
**For the Government:**
          U.S. ATTORNEY'S OFFICE
          By:  **Kristen Brook, Esq.**
               **Joseph Koehler, Esq**.
          40 North Central Avenue, Suite 1200
          Phoenix, AZ  85004

**For the Defendant Abdul Malik Abdul Kareem**:
          MAYNARD, CRONIN, ERICKSON, CURRAN & REITER, PLC
          By: **Daniel D. Maynard, Esq.**
          3200 North Central Avenue, Suite 1800
          Phoenix, AZ  85012

Official Court Reporter:
Elizabeth A. Lemke, RDR, CRR, CPE
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, SPC 34
Phoenix, Arizona  85003-2150
(602) 322-7247

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

1              P R O C E E D I N G S

2         (Called to the order of court at 3:30 p.m.)

3              THE COURT:  Good afternoon.  Please sit down.

4              THE CLERK:  Criminal case 15-707.  *United States of*

5    *America v. Abdul Malik Abdul Kareem*.  Time set for scheduling

6    conference.

7              MS. BROOK:  Good afternoon, Your Honor.  Kristen

8    Brook on behalf of the United States.

9              MR. MAYNARD:  Good afternoon, Your Honor.  Dan

10   Maynard on behalf of Abdul Malik Abdul Kareem who is present

11   and in custody.

12             THE COURT:  I reviewed the Proposed Scheduling Order

13   and would have gone forward without having you come in to talk

14   about it except for two things.

15             The first is the very last sentence of the Scheduling

16   Order that says:  Any motions to continue the trial date shall

17   be submitted to the Court no later than -- and then I'm

18   supposed to put a date in.

19             And the reason that we're having this scheduling

20   conference is because we are scheduling this case and setting

21   a firm trial date that isn't going to be continued unless some

22   emergency that cannot possibly be anticipated by a date

23   certain should come up.

24             And so I wanted to be sure that all of the dates that

25   were proposed here are being proposed and can be met with that

 1   in mind.

 2          This is not -- this is the whole reason why, when a

 3   case is designated as complex, that the Court is required to

 4   enter a scheduling order so that things aren't done just in

 5   the time that is allowed by the federal rules and with the

 6   anticipated one, two, and sometimes three or four trial

 7   continuances.

 8          And the second reason that I wanted you to come in is

 9   because the trial date that you proposed is a trial date that

10   we are not available for.  And so if the earliest trial date

11   that is realistic for you, and certainly is under this

12   schedule, is December 14th, the earliest trial date that I can

13   actually accommodate you is in January.

14          It's January 5th.  It's the first Tuesday in January

15   of 2016.

16          So that's -- those are the two items that we really

17   need to discuss.  And there may be other items now that I have

18   mentioned to you that whatever the trial date we pick is not

19   going to have a motion to continue maybe submitted by a

20   certain date, because there will be no motions to continue

21   this trial unless some unfortunate thing befalls one of you,

22   which we hope doesn't happen.

23          Understood?  Does January work for the government?

24          MS. BROOK:  The January 5th date, my co-counsel AUSA

25   Joe Koehler has another trial set and I believe it is that

1    5th.   It's *United States v. Martin*.   It's another case that is

2    a firm trial.

3           There is a chance that that case may plea and we will

4    know in the next couple of weeks if it does.

5           THE COURT:  This is a relatively new case.  Do you

6    know off the top of your head if the Martin case is an older

7    case?

8           MS. BROOK:  It is older.

9           THE COURT:  And with an in-custody defendant?

10          If it's older and in-custody, we know where the

11   priority is.  If it's older and out-of-custody, the priority

12   is less clear.

13          MS. BROOK:  I believe he is in custody, but I

14   believe -- I know for certain it's an older case.

15          And if I can just give a little bit of a backdrop in

16   terms of the date that we chose here for the trial date, so

17   the government filed a joinder motion which is document No.

18   36, joining to designate the case as a complex case.

19          And we did that because in this matter there is a

20   substantial amount of disclosure and discovery; particularly,

21   electronic.  Numerous dozens and dozens of electronic devices

22   that have been seized and are in the process of being

23   exploited.  Some are complete and some are near complete with

24   the exploitation process of those devices.

25          So with those, as well as the other components of

1    this case, that being out-of-state witnesses and out-of-state

2    crime scene, the government agreed that this was a complex

3    case.

4            Defense counsel wanted a trial date within the time

5    frame of 2015.  We felt something more, you know, in the month

6    of January and/or February was more realistic in terms of

7    receiving all the documentation, and most importantly, him

8    being able to follow up and do his own investigation on it.

9            We have started the first wave of disclosure.

10   Defense has received 25 CDs worth of disclosure, including

11   nearly 200 pages of FBI 302 Reports as well.  And there's

12   another batch that's close to on its way.  Defense counsel is

13   bringing over some terabyte hard drives for which to receive

14   more electronic media.  So that's the backdrop and the

15   framework.

16           Counsel -- or government counsel does not object to a

17   January date.  I just ask maybe it be a little bit later in

18   January.

19           THE COURT:  Okay.  Mr. Maynard?

20           MR. MAYNARD:  Your Honor, I was pushing for an

21   earlier trial date than a later trial date.  The problem I

22   have had, quite honestly, is my client has now been in custody

23   for nine weeks.  He's in solitary confinement.

24           I filed discovery within the first week.  I didn't

25   get a document until seven weeks.  And I did get 25 discs, but

 1    we couldn't open up two-thirds of them and they had to replace

 2    those and we've gotten those.

 3         We have reviewed what the government has given us.  I

 4    was told this afternoon that we needed to provide them with

 5    certain other electronic things to transfer other information.

 6    We will do that tomorrow.

 7         The sooner I can get the discovery -- and honestly,

 8    that's sort of the problem.  I'm wanting to move this case

 9    along.  We're looking at it as soon as it comes in.  And, you

10    know, the January 5th date would work for us.  I'll make it

11    work.  I don't know what else to tell the Court.

12         One thing that I think we might have a problem in --

13    and I guess I ought to address it now if it's okay with the

14    Court -- is that we entered into a protective order in this

15    case because I was told there was going to be information

16    concerning juveniles and we didn't want to disclose that and

17    that was fine.  So we entered into a protective order and the

18    Court has signed that.

19         But when I have gotten the first wave of discovery,

20    there's an awful lot of redaction that has gone on and I

21    understand why sometimes --

22         THE COURT:  Text redaction or identification

23    redaction?

24         MR. MAYNARD:  Some of it is text.  I mean, it's whole

25    blocks of paragraphs.  So I can't tell the Court what it is

1    because some of -- some of it is just pure identification, but

2    some of it is large sections.

3          With a protective order in place, I'm not sure why we

4    have that.  And additionally --

5          THE COURT:  Have you and Ms. Brook had an opportunity

6    to personally consult about these redactions?

7          MR. MAYNARD:  No.

8          THE COURT:  Because that's the necessary first step.

9    She may have a solution for you.

10         MR. MAYNARD:  Okay.  That will be fine.

11         THE COURT:  I'll be happy to resolve it if she

12   doesn't, but I think that it's -- and it may be -- I mean, one

13   possible solution is that she could show you the unredacted

14   and you could satisfy yourself that it's not relevant and that

15   would be that.

16         I don't know what the solution is, but I think it's

17   something that you and she need to try to achieve before you

18   ask for my assistance.

19         MR. MAYNARD:  Well, I wasn't really asking for it as

20   much as I was advising the Court that it's a little bit of an

21   issue, especially since we entered into a protective order.

22   And with a protective order in place, I guess I was a little

23   surprised to see how much was redacted.

24         So, Judge, look, I'm going to be the first one to

25   tell you, this is an aggressive schedule, but these are

1   unusual circumstances.  My client is in solitary confinement

2   over at the jail across the street.

3        THE COURT:  I can tell he's at the jail across the

4   street by the clothes that he's in.

5        MR. MAYNARD:  Yes.

6        And so we're eager to get to trial on this matter.

7        THE COURT:  Well, let me --

8        MR. MAYNARD:  But I also -- I mean, you know --

9        THE COURT:  Let me just raise two issues about the

10  trial date.  And I think it's a very aggressive -- and I'm

11  happy to have a very aggressive schedule as long as both of

12  you -- the government and the defense are committed to

13  achieving this schedule because it's not going to be easily

14  modified.

15       I probably will say that like four more times, but

16  one of the things that I do note that even if we were

17  available for trial in December, you've kind of put me in a

18  spot that -- with the motions requiring an evidentiary hearing

19  on November 20th, and with other motions not fully briefed

20  till November 12th, the motions in limine not fully briefed

21  until November 23, which is the Monday of the week of

22  Thanksgiving, you didn't really allow me any time to decide

23  the motions.

24       At this point in time I don't know whether there

25  won't be any or whether there will be 25 of them.  And so we

1    also need to be sure that the trial date allows for the

2    motions to be decided if there are any motions filed.

3          I don't know and maybe you can anticipate right now,

4    Mr. Maynard, whether there are suppression issues, whether

5    there are search warrant issues, whether there are statement

6    issues.  I don't know if your client made a statement and

7    whether there might be some basis to seek to suppress that on

8    the grounds of voluntariness or Miranda.

9          I don't know if there are identification issues.  I

10   mean -- you know, by saying let's have a hearing on Friday,

11   November 20th, well, if there's one evidentiary hearing,

12   that's probably plenty of time.  If there's six evidentiary

13   hearings, that's not going to be enough time.

14         And so, you know, we really need to make sure that

15   not only you have an aggressive schedule, but I have the

16   opportunity to give sufficient thought and deliberation to

17   resolving the evidentiary issues and the legal issues that

18   might come up during this case, whatever they might be.

19         So if you today, both sides, are fully committed to

20   this schedule, I think that we should enter the order at least

21   through the reply deadline on page 2 at the bottom.

22         And then, because we are going to move the trial at

23   least until January, that we can look at a possible change,

24   that is, extending out a little farther, these other late

25   November and early December dates.

1          My thought is that we should set this case for trial

2    on the second Tuesday in January to avoid the potential

3    conflict with the Martin case and also to give all of us time

4    to be ready since the first Tuesday follows a traditional

5    period of people not doing a whole lot of work, namely, the

6    week between Christmas and New Years.

7          The Martin case, Maureen looked it up while we were

8    talking, and it is a significantly older case and the

9    defendant is in custody.

10         I would not want to be in a position where that case

11   went to trial, you had to be bumped, and then we ended up

12   having to bump you farther, because the closer we get to the

13   trial date, if there's a continuance, the longer it often has

14   to be.

15         MS. BROOK:  It may be the case that the Martin case

16   is not completed within that first week if it is, in fact,

17   set, as I believe it is, on the 5th.  That it may take -- I

18   know there are significant witnesses.

19         Perhaps if the Court is available the third week of

20   January.

21         THE COURT:  You know, none of this has anything to do

22   with my availability other than if I were actually committed

23   to be some place out of the district because we have lots of

24   trials set already in January and we just have to prioritize

25   them.

1     The other thing that we could consider is moving jury

2   selection to the end of that -- setting the trial the same

3   week but later with the understanding that the jury would be

4   selected and sworn and that openings would start the following

5   week.

6     That would be Tuesday, the 19th.  Monday the 18th is

7   Martin Luther King Day and so it's a federal holiday.  We

8   don't have anything -- you don't see anything on our calendar

9   that's in January, do you?  I don't remember anything.

10    (Discussion had off the record.)

11    THE COURT:  So those are other -- something else that

12  we could consider doing.  I know that it's early to ask this

13  question, but do you have any sense of the number of days that

14  this trial might need?

15    MS. BROOK:  Mr. Koehler and I have discussed it at

16  some length.  We believe eight days, so it will roughly be

17  about 25 witnesses, plus or minus a couple.

18    THE COURT:  And for us, of course, eight days is two

19  full weeks because we only have trial Tuesday through Friday.

20    So just using eight days, if we did what I was last

21  suggesting, we did eight days, it would be the week of -- the

22  entire week of January -- beginning January 18th.  That

23  Monday -- and then the following week is the week of January

24  25th.  So that would take us to January 29th would be day

25  eight if the trial started with openings on Tuesday, the 19th.

1              And then I think it would probably be extremely

2     premature to ask Mr. Maynard how many days he thinks he might

3     need for his case.

4              MR. MAYNARD:  It is premature, but I can tell the

5     Court that I plan to be calling witnesses.  It's not going to

6     be just going to be cross-examination of the government's

7     witnesses.

8              One other issue that I thought about that may impact

9     some of this, Judge, and that is that the government had

10    mentioned to me several weeks ago that they were going to file

11    a superseding indictment.

12             If that happens, I mean, I can't tell you what's

13    going to be in it.

14             THE COURT:  I know.  I know.  We never -- well,

15    sometimes the government gives a hint as to what's going to be

16    in it, but let's just ask this.

17             If there is a superseding indictment, do you have an

18    estimate as to when you would be going before the Grand Jury

19    to get that?

20             MS. BROOK:  If there is, in fact, a superseding

21    indictment in this case -- and the government has discussed

22    with defense counsel that possibility -- it would be in time

23    to keep with the proposed schedule that we have submitted, so

24    in keeping and not throwing off any of the dates that are

25    suggested in the proposed order.

1          THE COURT:  So could we safely assume that it would

2    be in the next 30 days?

3          MS. BROOK:  It would be in a number of weeks, that's

4    correct.

5          THE COURT:  I think that's as good as we're going to

6    get, Mr. Maynard.

7          MR. MAYNARD:  That's probably as good as it gets.

8          THE COURT:  Okay.  So let's look then -- if we -- so

9    what are your feelings about doing jury selection and then

10   starting fresh on a Tuesday?

11         MR. MAYNARD:  That sounds fine with the defense.

12         THE COURT:  Well, then why don't we set the trial

13   date on Thursday; the second Thursday, the 14th of January.

14   January 14th.

15         MR. MAYNARD:  Okay.

16         MS. BROOK:  And that's good with the government as

17   well.

18         THE COURT:  Then with that date set, then we can --

19   we can leave your motion in limine deadline and response

20   exactly where they are or we can move them a few weeks into

21   the future.  These things don't impact me when you file them.

22         We'll keep -- we will set your evidentiary motions

23   hearing on the 20th and also show that as the interim pretrial

24   conference because that will be our check to make sure that

25   everything is on schedule and ready to go in January.

1          And also at that time we would discuss issues like

2    prescreening the jurors for time.  No reason to discuss that

3    today, but that -- with a trial that's going to last over four

4    weeks -- four different weeks -- we would probably be urging

5    that we consider a prescreen.  It just streamlines jury

6    selection.

7          The Final Pretrial Conference and argument on motions

8    in limine, again, we could keep it on December 7th and the

9    filing of trial briefs and all that, but we could also move

10   that to later in the month or in the first week of January.

11         You're not involved with Martin, are you, Ms. Brook?

12         MS. BROOK:  No.  I am not.

13         THE COURT:  So you could --

14         MS. BROOK:  I would definitely be available.

15         MR. MAYNARD:  Judge, I would be inclined to move them

16   closer to the trial date.

17         THE COURT:  Okay.  Why don't we set the Final

18   Pretrial Conference and arguments on motions in limine on

19   January -- is that a Monday, the 4th?

20         THE CLERK:  Yes.  Or we can do it the 11th.

21      (Discussion had off the record.)

22         THE COURT:  We'll do it on January 4th, 2016, at

23   1:30.

24         But I will need your -- the things in item 6 -- well,

25   I don't need all of the things in item 6 by the -- before the

1    4th, but before the 4th I need at a minimum your Joint

2    Proposed Voir Dire and any supplemental voir dire for which

3    there is no agreement as well as a Joint Statement Of The Case

4    because those are things that we would discuss at the Final

5    Pretrial Conference.

6            So I need them.  And I'm going to let you -- I only

7    need them by sometime the week before.  You may want to do

8    them before that.  It's up to you.  So I will set the deadline

9    in late December or earlier if you prefer.

10           With respect to trial briefs, Joint Proposed Jury

11   Instructions, supplemental jury instructions, I can let you

12   get them to me by the end of the first week of January because

13   they won't have to be discussed at the Final Pretrial

14   Conference.

15           So that would be the 7th.  Is that Friday?  No, the

16   8th.  Okay.

17           So for jury instructions and verdict forms and trial

18   briefs, we'll say January 8th.  But for Joint Statement Of The

19   Case, Joint Proposed Voir Dire, supplemental voir dire, we

20   need that before -- the week -- at least the week before.

21           So do you want me to set it the week before and then

22   you are going to be doing it the week before?  Or do you

23   want --

24           MR. MAYNARD:  Yes.  That would be fine, Your Honor.

25           MS. BROOK:  Yes.

1          THE COURT:  All right.  Then I will give you until

2   noon on December 28th.  Okay?  That works?

3          MS. BROOK:  And two additional points.

4          If we could attend to Section A, No. 6, which was a

5   *Jencks* disclosure date of December 7th, we put that there as

6   that being the week before trial.  So if we could move that to

7   be a week before the new trial being January 7th.

8          THE COURT:  January 7th.  Is that agreeable,

9   Mr. Maynard?

10          MR. MAYNARD:  Yes.

11          MS. BROOK:  Additionally, B-6 and I believe

12   defendant's -- that's defendant's --

13          THE COURT:  So yours is -- your final -- they're both

14   the same.  They're both December 13th.

15          MS. BROOK:  Right.  So A-9 and B-6, if we could move

16   those as well to close in time to the trial date, so maybe

17   just a couple of days before.

18          MR. MAYNARD:  January 6th would be fine.

19          THE COURT:  January -- Friday is the 8th.  How about

20   Friday the 8th?

21          MR. MAYNARD:  That's fine.

22          THE COURT:  And does everything else look -- you want

23   to leave -- I would be happy to leave motions in limine the

24   same because you'll have everything.  You know, the motions in

25   limine usually arise out of 404(b) notices or 609 notices,

 1   those kinds of things, and you'll have them well in advance of

 2   November 16th.

 3           MS. BROOK:  And that's fine with the government.

 4           MR. MAYNARD:  That date is fine.

 5           MS. BROOK:  I just wanted to give one caveat on A,

 6   No. 1, which is our *Brady* disclosure.  In this case the Court

 7   may be aware from other previous hearings, we do have a

 8   confidential witness.

 9           And the government does not intend to disclose any

10   document that identifies the individual who is the

11   confidential witness until a period in time close before

12   trial.

13           The government does have concerns about that

14   individual's safety and protecting and making sure mechanisms

15   are in place to do so.  So we can obviously, if defense

16   counsel disagrees, file motions on it or handle it in a

17   separate forum, but I just wanted to flag that as an issue for

18   the Court.

19           THE COURT:  And my thoughts on confidential witnesses

20   is that confidential witnesses -- that the government is going

21   to disclose, in contrast to all of the other witnesses that

22   are going to be disclosed, there's good reason to reasonably

23   delay their disclosure if there are concerns about what might

24   happen if that person's identity becomes known farther in

25   advance.

1          But beyond that, I'm not going to say what I think

2   that date is.

3          MR. MAYNARD:  Your Honor, I understand they have a

4   confidential witness.  We know who the confidential witness

5   is.  I mean --

6          THE COURT:  Oh, you already know who it is?

7          MR. MAYNARD:  We've known it all alone.

8          THE COURT:  Oh.

9          MR. MAYNARD:  So, I mean, that's really a little bit

10  of a red herring.  I know who it is.  I know where he is.

11         THE COURT:  Well, that does change things, Ms. Brook.

12  I mean, if the confidential witness is well known or is

13  already known to the defense and if you have a -- you can

14  always have a -- expand your protective order if you have

15  concerns about further disclosures beyond the people that you

16  already know, which I assume is Mr. Maynard and his client,

17  because otherwise, how would Mr. Maynard know if it wasn't his

18  client that told him -- then the issue may not be as

19  concerning if he's already known.

20         MS. BROOK:  The government still retains a concern

21  with safety of identifying and us giving any confirmation to

22  the identity of a confidential witness.

23         Defense counsel's supposition about who that might be

24  is different than our confirmation of who that individual is

25  in terms of the compromise or concern for that individual's

1    safety.

2            THE COURT:  I understand what you're saying.  But if

3    Mr. Maynard makes a specific request for information about a

4    specific person who is going to be a witness, I mean, what do

5    you have left to try to pretend is confidential?

6            MS. BROOK:  Just so the Court is aware, through the

7    course of our standard discovery and our discovery deadlines

8    that are part of our *Brady* disclosure, the contents of all

9    statements, the nature and extent of statements made, will

10   obviously be disclosed.  All I'm referring to are documents

11   that actually affirmatively identify.

12           THE COURT:  But you don't have -- do you have some

13   reason to believe that that's *Brady* material?

14           MS. BROOK:  No.

15           THE COURT:  Okay.  I mean, because you brought it up

16   in the context of *Brady*, which would cause me to think that

17   you were -- you believed that despite the fact that it's your

18   witness, there was also *Brady* material.

19           MS. BROOK:  Right.  No.  And I'm not saying that.

20           I guess all I'm saying is not to get into a

21   discussion of *Jencks* material, *Giglio* material, or *Brady* and

22   distinguishing between the three and where this would fall,

23   just that as part of our standard disclosure and the vast, you

24   know, contents of it, the nature of communications are

25   certainly going to be conveyed.

1          THE COURT:  So you have a statement?

2          MS. BROOK:  Correct.

3          THE COURT:  When do you anticipate that you would

4     like to disclose this person's identity and their statement?

5          MS. BROOK:  Well, I guess what --

6          THE COURT:  Are you disclosing the statement without

7     the identity?

8          MS. BROOK:  Correct.

9          THE COURT:  Oh.  So the statement is being disclosed?

10         MS. BROOK:  Yes.

11         THE COURT:  And you're just calling them "CW."

12         MS. BROOK:  Right.

13         MR. MAYNARD:  I don't have a problem with that.

14    Here's the concern --

15         THE COURT:  Well, since you already know who it is,

16    the fact that it says "CW," you still get everything.

17         MR. MAYNARD:  It doesn't matter.

18         THE COURT:  Okay.

19         MR. MAYNARD:  The concern I have is I have gotten 25

20    discs from the government and most of them are the oral

21    interviews that were done with various witnesses in the case.

22         The thing that's conspicuously missing from what the

23    government has given us is the oral interview with the

24    confidential informant and I think there were numerous ones.

25         And secondly, the confidential informant made at

1   least one, if not two phone calls that we know were taped that

2   the government has said, yes, we had taped, but we haven't

3   gotten those.

4          And the confidential informant wore a wire on

5   occasions and I haven't gotten those.

6          So what I have gotten from the government concerning

7   what the confidential informant will say is basically a 302 or

8   their synopsis of it.

9          I want to hear what actually happened on the

10  telephone calls, on the wires, and in the interview.

11         THE COURT:  And are you disclosing those without

12  disclosing the identity?

13         MS. BROOK:  I suggest it might be most helpful in

14  this case for Mr. Maynard and I to discuss this particular

15  matter at length between the two of us.  And if we can't come

16  up with an agreement, that perhaps we file something with Your

17  Honor to resolve.

18         THE COURT:  That's fine, as long as you are willing

19  to talk to him about it and do that in fairly short order.

20         MS. BROOK:  We will.

21         THE COURT:  Anything else on this?

22         How about you, Mr. Maynard, any other issues?

23         MR. MAYNARD:  No.

24         THE COURT:  And I am happy to convene a hearing on

25  any of these issues that you and Ms. Brook are not able to

1    resolve.

2            And if we do convene a hearing, Mr. Maynard, your

3    client is welcome to attend any and all of them.  But if for

4    some reason you and your client agree that his presence should

5    be waived, let us know so that we don't order that he be

6    transported.  So we will transport him to any hearing that we

7    have unless you tell us not to.

8            Does that work?

9            MR. MAYNARD:  That works, Your Honor.  And with him

10   being closer it's a little bit different than when he's in

11   Florence, but I understand.

12           THE COURT:  Well, it makes it easier for you to

13   visit.

14           MR. MAYNARD:  That's right.

15           THE COURT:  Okay.  Then this -- we will get an order

16   out.  And I will close by saying what I said at the start.

17   This is our Scheduling Order for this case and it is the order

18   that I expect everyone to comply with, including our January

19   trial date.  And extensions or continuances would have to be

20   based on unforeseeable and presently unknown circumstances.

21           Thank you.  Court is in recess.

22           MS. BROOK:  Thank you.

23           MR. MAYNARD:  Thank you.

24       (Proceedings adjourned at 4:05 p.m.)

25                           * * *

C E R T I F I C A T E

     I, ELIZABETH A. LEMKE, do hereby certify that I am duly appointed and qualified to act as Official Court Reporter for the United States District Court for the District of Arizona.

     I FURTHER CERTIFY that the foregoing pages constitute a full, true, and accurate transcript of all of that portion of the proceedings contained herein, had in the above-entitled cause on the date specified therein, and that said transcript was prepared under my direction and control.

     DATED at Phoenix, Arizona, this 5th day of October, 2015.


                         s/Elizabeth A. Lemke
                         ELIZABETH A. LEMKE, RDR, CRR, CPE