Daniel D. Maynard, No. 009211
**MAYNARD CRONIN ERICKSON**
**CURRAN & REITER, P.L.C.**
3200 North Central Avenue, Suite 1800
Phoenix, Arizona 85012
(602) 279-8500

Attorneys for Defendant

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>          Plaintiff,<br><br>v.<br><br>Abdul Malik Abdul Kareem,<br><br>          Defendant. | No.  CR 15-00707-PHX-SRB<br><br>**DEFENDANT'S REPLY TO MOTION TO DISMISS THE INDICTMENT OR IN THE ALTERNATIVE SUPPRESS EVIDENCE DUE TO VIOLATIONS OF F.R.CR.P. 16** |

Defendant, Abdul Malik Abdul Kareem ("Mr. Abdul Kareem"), by and through undersigned counsel, hereby files his Reply in opposition to Response to Defendant's Motion to Dismiss the Indictment or in the Alternative Suppress Evidence Due to Violations of F.R.Cr.P. 16. This Motion is supported by the attached Memorandum of Points and Authorities, the files and records in this case, and any other evidence or argument that may be properly presented to the Court.

### MEMORANDUM OF POINTS AND AUTHORITIES

**I.     THE INDICTMENT SHOULD BE DISMISSED OR EVIDENCE OF MR. ABDUL KAREEM'S MAY 5, 2015 STATEMENT SHOULD BE SUPPRESSED BECAUSE THE FAILURE TO PRESERVE THE RECORDING OF THE STATEMENT VIOLATES DUE PROCESS.**

A due process violation occurs when the government loses or destroys certain evidence. *Arizona v. Youngblood,* 388 U.S. 51 (1988) ; *California v. Trombetta*, 467 U.S. 479 (1984). Where the government acts in bad faith in destroying or failing to preserve potentially exculpatory evidence, the remedy can be dismissal of the indictment.  *United States v. Zaragoza-Moreira*, 780 F.3d 971 (9th Cir. 2015); *United States v. Cooper*, 983 F. 2d 928 (9th

MAYNARD CRONIN ERICKSON CURRAN & REITER, P.L.C.
ATTORNEYS AT LAW
3200 NORTH CENTRAL AVENUE • SUITE 1800 • PHOENIX, ARIZONA 85012
TELEPHONE 602.279.8500 • FACSIMILE 602.263.8185

Cir. 1993) "Potentially useful evidence, as defined in *Youngblood* is 'evidentiary material of which no more can be said than that it could have been subject to tests, the results of which might have exonerated the defendant.'" *United States v. Zaragoza-Moreira,* 780 F.3d 971 (9th Cir. 2015) quoting *Arizona v. Youngblood,* 388 U.S. 51 (1988).

In *Zaragoza-Moreira*, the Ninth Circuit held that the bad faith failure to preserve video evidence that could have supported the Defendant's duress claim mandated a dismissal of the indictment. *United States v. Zaragoza-Moreira,* 780 F.3d 971 (9th Cir. Cal. 2015). In *Zaragoza-Moreira*, the Defendant was charged with transporting methamphetamine into the United States and pled guilty to the charge. In her interview with law enforcement, the Defendant claimed that she was forced to carry the methamphetamine across the border and asserted that she tried to call attention to herself while waiting in the pedestrian line. *Id* at 975,  Rather than preserving the surveillance video of the Defendant in the pedestrian line, law enforcement allowed it to be recorded over. *Id.* at 976.  The Court found that the government acted in bad faith by failing to preserve the video evidence, the video footage was "potentially useful evidence" and the Defendant was unable to obtain comparable evidence by other reasonably available means. *Id*.  Also, the Court found it particularly troubling that the Homeland Security Investigator omitted any mention of the Defendant's duress claim from her reports, including her probable cause statement to the magistrate judge. *Id*. at 980.  Also, the Court found that there were not any other reasonable means by which the Defendant could obtain the evidence because the alternative would force the Defendant to testify in violation of her Fifth Amendment right. *Id.* at 981.

Here, the Government's argument rests on the premise that law enforcement acted in good faith by failing to record Mr. Abdul Kareem's statement.  In their response, the government cited three cases to support the denial the suppression of the contents of an interview due to lack of recording.  None of these cases, however, involved an allegation of bad faith.  In *United States v. Romo-Chavez*, 681 F.3d 955, 1961 (9th Cir. 2012), the defendant

conceded there was no bad faith on the part of law enforcement. In *United States v. Smith-Baltiher*, 424 F.2d 913, 925 (9th Cir. 2005), the defense asserted only that the INS inspector "unreasonably neglected to electronically record the interrogation" despite having the capability to do so and in *United States v. Coades*, 549 F.2 1303, 1305 (9th Cir. 1977), there was no bad faith. In *United States v. Romo-Chavez*, the Court distinguished the situation where evidence was destroyed in bad faith and the defendant was prejudiced by its destruction. *U.S. v. Romo-Chavez,* 681 F.3d 955, 961. The Court found in that case that the Defendant would be entitled to an jury instruction permitting an inference from the government's destruction that the evidence would have yielded evidence harmful to the government. *Id.* at 961. Also, the Ninth Circuit Court of Appeals has held that such an instruction "pales in comparison" to the destroyed exculpatory evidence. *United States v. Cooper*, 983 F. 2d 928, 932. Also, the Court held that suppression of that evidence was not a sufficient remedy and the bad faith destruction of exculpatory evidence required a dismissal of the indictment. *Id.* at 932-933.

While the government claims that it failed to record the statement due to negligence, the surrounding circumstances suggest bad faith. Mr. Abdul Kareem incorporates the facts and argument that he makes in his Motion to Suppress Evidence Unlawfully Obtained and the Reply. The Government has been targeting Mr. Abdul Kareem since 2012 when it obtained his computer in the pretext search of Abubakar Hussein Ahmed's residence allegedly to obtain evidence concerning the making of a forged ASU diploma by Mr. Ahmed. Although the government claims technical difficulties prevented a recording of Mr. Abdul Kareem's interview in an FBI interrogation room, the Government has failed to attach an affidavit or declaration from any FBI technician explaining why or how the taping device malfunctioned. In fact, it was not until two months after the alleged malfunction and apparently three weeks after Mr. Abdul Kareem was indicted that the alleged malfunction was disclosed. Law enforcement had no issues recording, sometimes in multiple formats, statements of witnesses in their homes and even outside in the desert. Mr. Abdul Kareem's interview in the FBI office

occurred right after a high profile highly publicized terrorist attack by two men alleged to be Islamic extremists. One of these men, Elden Simpson ("Mr. Simpson") had been under surveillance for many years by the FBI and had been prosecuted for allegedly lying to the FBI about terrorist activities. He had been Mr. Abdul Kareem's roommate and the FBI had obtained both of their computers under a pretext warrant. Clearly, the FBI had reason to interview Mr. Abdul Kareem and to make sure that it recorded his statements accurately.

Second, law enforcement did not document their failure to record Mr. Abdul Kareem's May 5, 2015 interview until July 1, 2015, nearly two months after the fact and after Mr. Abdul Kareem was indicted and had obtained counsel. The indictment alleges numerous statements by Mr. Abdul Kareem that are alleged to have been made in the May 5, 2015 interview that are said to be false.

Third, Mr. Abdul Kareem has no alternative means of proving what a recording would show. He is unable to obtain comparable evidence by available means. As in *Zaragoza-Moreira*, it is particularly troubling that the agents' summary of Mr. Abdul Kareem's interview omits exculpatory facts to which the Defendant is the only witness. As in *Zaragoza-Moreir*a, this puts Mr. Abdul Kareem in the untenable position of being forced to testify to these exculpatory facts or accept the law enforcement agents' version of events. The Court in *Zaragoza-Moreira* found that putting the Defendant in this position by failure to preserve evidence was indicative of law enforcement's bad faith. Also, the Court found it would be a violation of the Fifth Amendment to force the Defendant to testify as an alternative to the missing evidence. Likewise, as in *Zaragoza-Moreira*, the bad faith failure to record Mr. Abdul Kareem's statement should result in the same relief.

Whether law enforcement acted according to their normal practices is a factor in determining whether they acted in good faith. *California v. Trombetta*, 467 U.S. 479, 487 (1984). Agents have demonstrated in this case that their normal practice was to record all important interviews. This was done when witnesses were out of custody and done at remote

locations. The government has produced twenty four CD's containing the recorded interviews of thirteen witnesses. (*See* Ex. 1).  They have produced seven CD's containing covertly recorded phone calls and body recordings of Mr. Abdul Kareem. (*See* Ex. 1).  It was clearly the government's normal practice to record interviews and its failure to record the one interview in which their own conduct was at issue demonstrates bad faith.

Further despite the government's assertion, F.B.I. policy was in favor of recording Mr. Abdul Kareem's interview.  In 2014, the F.B.I. issued a new policy establishing a presumption that individuals in their custody would be electronically recorded absent a significant and articulable law enforcement purpose.  Here, the government's argument that the presumption does not apply turns on the uncorroborated assertion by the federal agents that Mr. Abdul Kareem was not in custody during his May 5, 2015 interview.  Conveniently, without the recording the same agents failed to obtain, Mr. Abdul Kareem cannot adequately argue otherwise.

Even if Mr. Abdul Kareem was not in custody during the interview, the 2014 policy encouraged electronic recording where the presumption did not apply.  This supplanted the previous policy which encouraged recording interviews where  1) the interview was to gather evidence for prosecution, 2) where the defendant's own words and appearance would help rebut doubt about the voluntariness of the confession, 3) whether interviews with other subjects in the same or related cases have been electronically recorded, and 4) whether mental state is at issue in which case "proof of which would be considerable aided by the defendant's admissions in his own words."  Every one of those factors is in favor of agents recording Mr. Abdul Kareem's interview according to policy.  The fact that agents acted contrary to policy and contrary to the way they conducted the other interviews in this case, indicates that they were acting in bad faith by failing to record the interview.

All of the attendant circumstances indicate that law enforcement acted in bad faith in failing to preserve a recording of Mr. Abdul Kareem's May 5, 2015 interview. First, federal agents failed to act according to their policy in favor of recording interviews. Second, it is suspicious that the failure to act in accordance with this policy was isolated to the one exculpatory interview in the entire case and the one interview that is the bases for one of the counts in the indictment. This requires Mr. Abdul Kareem to waive his Fifth Amendment rights in order to rebut the testimony of two agents, something he should not be forced to do. Third, it is not logical to believe that the only technical issue with an electronic interview occurred where agents arguably have the most technical resources and it is the most important interview. It took place in an FBI interrogation room and is the basis for Count 3 of the superceding indictment. Finally the failure was not addressed for two months. All these factors taken together indicates that law enforcement acted in bad faith in failing to preserve the recording of Mr. Abdul Kareem's May 5, 2015. For all the above stated reasons, the indictment should be dismissed or in the alternative, evidence of the interview should be suppressed.

RESPECTFULLY SUBMITTED this 12th day of November, 2015.

**MAYNARD CRONIN ERICKSON
CURRAN & REITER, P.L.C.**


By /s/Daniel D. Maynard
　　Daniel D. Maynard
　　3200 North Central Avenue, Suite 1800
　　Phoenix, Arizona 85012
　　Attorney for Defendant

**ORIGINAL** of the foregoing e-filed this 12th day of November, 2015 via ECF with:

Clerk of the Court
United States District Court
401 W. Washington
Phoenix, AZ 85003

**COPY** of the foregoing e-delivered this 12th day of November, 2015 via ECF to:

Kristen Brook
Joseph E. Koehler
US Attorneys Office
2 Renaissance Square
40 N. Central Ave., Ste. 1200
Phoenix, AZ 85004-4408
Attorneys for Plaintiff

  /s/Stacey Tanner