Daniel D. Maynard, No. 009211
**MAYNARD CRONIN ERICKSON**
**CURRAN & REITER, P.L.C.**
3200 North Central Avenue, Suite 1800
Phoenix, Arizona 85012
(602) 279-8500

Attorneys for Defendant

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR 15-00707-PHX-SRB |
| Plaintiff, | **DEFENDANT'S REPLY TO MOTION TO SUPPRESS EVIDENCE UNLAWFULLY OBTAINED** |
| v. | |
| Abdul Malik Abdul Kareem, | |
| Defendant. | |

Defendant, Abdul Malik Abdul Kareem ("Mr. Abdul Kareem"), by and through undersigned counsel, hereby files his Reply to Response to Defendant's Motion to Dismiss the Indictment or in the Alternative Suppress Evidence. This Motion is supported by the attached Memorandum of Points and Authorities, the files and records in this case, and any other evidence or argument that may be properly presented to the Court.

### MEMORANDUM OF POINTS AND AUTHORITIES

**I.    MR. ABDUL KAREEM DOES HAVE STANDING TO CHALLENGE THE SEARCH OF THE LENOVO COMPUTER AND ATTACHED STORAGE DEVICE**

Fourth Amendment rights are personal rights that may be asserted by a defendant who has a legitimate expectation of privacy in the invaded place or the thing searched. (*Rakas v. Illinois* (1978) 439 U.S. 128, 133-134, 143.) Thus, to succeed on a motion to exclude evidence based on a claim of unreasonable search and seizure, the defendant must first establish a personal, reasonable, and legitimate expectation of privacy in the particular area searched or thing seized. ( *United States v. Payner* (1980) 447 U.S. 727, 731). The Fourth Amendment provides sanctuary for citizens wherever they have a legitimate expectation of privacy. *Katz*

MAYNARD CRONIN ERICKSON CURRAN & REITER, P.L.C.
ATTORNEYS AT LAW
3200 NORTH CENTRAL AVENUE • SUITE 1800 • PHOENIX, ARIZONA 85012
TELEPHONE 602.279.8500 • FACSIMILE 602.263.8185

*v. United States*, 389 U.S. 347, 359.  An overnight guest has a legitimate expectation of privacy in his host's home. *Minnesota v. Olson*, 495 U.S. 91, 99.

The Government cites *United States v. Decoud* for the proposition that a disclaimer of ownership abandons the expectation of privacy in an item. *United States v. Decoud*, 456 F.3d 996, 1007-1008 (9th Cir. 2006).  In *Decoud*, the Defendant's car was searched as an inventory search after a traffic stop.  Officers searched a locked briefcase inside the trunk of the vehicle.  The Defendant denied ownership of both the car and the briefcase.  In this situation the Court held that the Defendant lacked standing to pursue a Motion to Suppress Evidence under the Fourth Amendment.

The case here is considerably distinct from that of *Decoud*.  Here, Mr. Kareem never disclaimed that he occupied the bedroom from which the Lenovo laptop was seized as an overnight guest of Mr. Ahmed's.  In fact, in Mr. Ahmed's affidavit, he swore under penalty of perjury that the room from which the Lenovo laptop was seized was the bedroom in which Mr. Kareem and Mr. Simpson shared.  Aside from a person's body, there can be no place a person reasonably expects privacy more than a person's bedroom.  A disclaimer of ownership of an item seized from that bedroom does not negate the reasonable expectation of privacy in the place searched.  Further, the storage device was attached to Mr. Abdul Kareem's computer.  Mr. Abdul Kareem certainly has a reasonable expectation of privacy in his own computer.

**II.    THE ELECTRONIC FILES SEIZED WERE NOT SUBJECT TO THE PLAIN VIEW EXCEPTION ALLOWING FOR A WARRANTLESS SEARCH AND SEIZURE OF INADVERTENTLY DISCOVERED CONTRABAND THEREFORE SHOULD BE SUPPRESSED.**

**A.    Because of the Commingled Nature of Electronic Files, Law Enforcement Must Take Particular Care to Limit the Search of Such Files to the Scope of the Warrant and Avoid Bringing All Files into "Plain View."**

"The plain view doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges." *Coolidge v. New Hampshire*, 403 U.S. 443, 466-67, 91 S. Ct. 2022, 29 L.Ed 2d 564 (1971).  In order to seize

evidence outside the scope of the warrant, evidence must be in plain view, the incriminating nature of the item must be immediately apparent, and the discovery must be inadvertent. *Coolidge v. New Hampshire*, 403 U.S. 443, 466-67, 91 S. Ct. 2022, 29 L.Ed 2d 564 (1971); *Arizona v. Hicks*, 480 US 321, 107 S. Ct. 1149, 94 L. Ed. 2d 347 (1987).

Because data is so intermingled, files contained electronically in computers presents a unique scenario in terms of which items fall under the plain view exception. The Court of Appeals for the Ninth Circuit addressed this situation at length in *United States v. Comprehensive Drug Testing, Inc*. *United States v. Comprehensive Drug Testing, Inc.* 621 F. 3d 1162 (9th Cir. 2010). In *Comprehensive Drug Testing*, the Court set forth the procedures and safeguards that must be observed in issuing and executing search warrants for electronically stored information. *Id.* While the Court recognized that the nature of electronic evidence may justify the wholesale seizure of considerably more data than that for which there is probable cause, law enforcement must observe procedures in order to segregate the data that falls within the scope of the warrant from data that does not. *Id.* The Court held that law enforcement should follow those procedures set forth in *United States v. Tamura*, to address the situation where documentary evidence is so intermingled with seizable materials, that law enforcement is required to seize a broader amount than covered by the warrant. *Id.* citing *U.S. v. Tamur*a, 694 F. 2d 591 (9th Cir. 1982). The Court in *Comprehensive Drug Testing* stated, "The point of the *Tamura* procedures is to maintain the privacy of materials that are intermingled with seizable materials, and to avoid turning a limited search for particular information into a general search of office file systems and computer databases." *Id.* at 1170.

The Court in *Tamura* address the situation where files in paper form were stored in file cabinets. In *Tamura*, the Court held that where documents are so intermingled that they cannot be sorted on site, law enforcement officials may conduct a wholesale seizure of more documents than are within the scope of the warrant, however should follow careful procedures

in order to ensure that they do not search outside the scope of the warrant. *Id.* at 596.   The Court held that law enforcement should avoid violating Fourth Amendment rights by sealing and holding the documents pending approval by a magistrate of a further search, in accordance with the procedures set forth in the American Law Institutes Model Cod of Pre-Arraignment Procedure. *Id.* at 595-596. This procedure first requires that law enforcement "shall endeavor by all appropriate means to search for and identify the documents to be seized without examining the contents of documents not covered by the warrant." *Id.* at 596.  If documents are so intermingled, law enforcement cannot identify the contents without examining contents of protected documents, law enforcement "shall either impound them under appropriate protection where found, or seal them for safekeeping pursuant to further proceedings." *Id.* at 596.  A hearing should then be held to determine which items should be returned and for specification of such conditions on the further search of the documents to be seized. *Id.* at 596.

The Court in *Comprehensive Drug* Testing, recognized that electronic evidence requires an even more complex situation than intermingled paper records.  The Court recognized that because electronic files are so intermingled, a search of electronic files runs a significant risk of devolving into a general warrant, because all the files come into "plain view." *Comprehensive Drug Testing*, 621 F.3d 1162, 1176.

> This calls for greater vigilance on the part of judicial officers in striking the right balance between the government's interest in law enforcement and the right of individuals to be free from unreasonable searches and seizures.  The process of segregating electronic data that is seizable from which is not must not become a vehicle for the government to gain access to data which is it has no probable cause to collect."

*Id.* at 1177.

To this effect, the Court in *Comprehensive Drug Testing*, suggested an initial review of the electronic data by "computer personnel" to segregate the data that falls within the scope of the warrant from data that does not. *Id.* at 1171.  The personnel then should return the materials

outside the scope of the warrant to their owner and provide the remaining materials within the scope of the warrant to the case agent. *Id.* at 1171. The Court found that because law enforcement did not follow any limiting procedure and conducted a wholesale search of every file copied from the computers, this was "an obvious case of deliberate overreaching by the government in an effort to seize as to which is lacked probable cause." *Id.* at 1172.

Here, there is no evidence that law enforcement engaged in any attempt to segregate data within the scope of the search warrant from data that was not. First, despite having prior knowledge of which computer belonged to Mr. Ahmed, law enforcement entered Mr. Simpson and Mr. Abdul Kareem's private bedroom and removed their computers and attendant devices. Law enforcement made no effort to segregate devices to which Mr. Ahmed had access and those belonging to other individuals.

Further, law enforcement did not engage "computer personnel" to segregate the data on the three computers seized from the home. In fact, although the alleged investigation into the Attempted Forgery was conducted by the Arizona State Police Department, the three computers were forensically analyzed by the F.B.I. Not only did law enforcement fail to attempt to segregate the data prior to providing it to the case agent, all of the data was deliberately provided to an agency that had no justification to view any of the data. Rather than restricting the case agent from inadvertently discovering evidence outside of the scope of the warrant, law enforcement deliberately created the situation where the F.B.I. could "inadvertently" discover evidence relating to federal crimes.

Finally, the F.B.I. did not engage in *any* attempt to limit the search to the scope of the warrant. While the warrant authorized a search for evidence of forgery, and specifically delineated e-mail files, agents copied and searched the entire content of three hard drives and one external thumb drive. There was no attempt to limit the search to e-mail files, or even document files. In fact, a majority of the files which the government used against Mr. Abdul

Kareem at the Detention Hearing were video files, clearly labeled as forms of extremist Muslim media.  It is, in no way, reasonable to believe those files contained evidence of forgery.

Because law enforcement took no precautions to limit the wholesale search of the electronic data here, they conducted a general search in violation of the Fourth Amendment and all electronic evidence seized from the electronic devices should be suppressed.

**B.      The Electronic Files Were Not Subject to the Plain View Exception Because They Were Not Inadvertently Discovered.**

It is a fundamental limitation on the plain view doctrine that the discovery of evidence in plain view must be inadvertent.  *Coolidge v. New Hampshire*, 403 U.S. 443, 469.   The fact that an item is in plain view alone is never enough to justify the seizure of evidence.  *Id.* at 468.  "This is simply a corollary of the familiar principle. . . that no amount of probable cause can justify a warrantless search or seizure absent exigent circumstances."  *Id.* at 468.   The plain view doctrine is crafted to ensure that limited warrants do not become general warrants while recognizing that "the inconvenience of procuring a warrant to discover inadvertent discovery is great."  *Id.* at 470.

> "[W]here the discovery is anticipated, where the police known advance the location of the evidence and intend to seize it, the situation is altogether different.  The requirement of a warrant to seize imposes no inconvenience whatever, or at least none which is constitutionally cognizable in a legal system that regards warrantless searches as 'per se' reasonable."

*Id.* at 470.

Here, as previously discussed, law enforcement conducted a planned warrantless search.  The discovery of the electronic files was not inadvertent, and the files do not fall within the plain view exception.  Law enforcement used a search warrant for a minor forgery offense as a pretext to search for evidence of terrorism related charges.  Prior to the warrant, federal law enforcement believed Mr. Simpson, Mr. Abdul Kareem, and Mr. Ahmed to be engaged in or have knowledge of terrorism related activity and they used the search warrant to gain access

- 6 -

to the electronic devices within the house.  Federal law enforcement made no efforts to avoid discovery of files outside the scope of the warrant, rather they seized the electronic evidence from a state agency and conducted a wholesale search of the items despite having no relationship to the state charge of forgery.  A magistrate did not find that there was probable cause to search for evidence of terrorism related crimes, therefore the search was not permissible. Because this was the case, the evidence should be suppressed.

**C.**     **The Electronic Files Were Not Subject to the Plain View Exception Because Officers Did Not Have Probable Cause to Believe They Were Evidence of a Crime.**

Even assuming arguendo that law enforcement did inadvertently discover the electronic files, the files do not fall under the plain view exception because they were not recognizable as immediate contraband.  In order to search an item outside the scope of a warrant, police must have probable cause to believe an item is contraband and the incriminating nature must be immediately apparent without manipulating the item. *Arizona v. Hicks*, 480 U.S. 321 (1987). "Under the plain view doctrine . . . the incriminating nature of an object is generally deemed 'immediately apparent' where police have probable cause to believe it is evidence of a crime." *United States v Chesher*, 678 F.2d 1353 (9th Cir. 1982).

Further, where documents containing ideas are the subject of potential seizure, the seizure of such items must be specifically stated in the warrant. *Stanford v. Texas*, 379 U.S. 476 at 485 (1964) .  The United States Supreme Court has stated that the First and Fourth Amendments are closely related in that they both protect individual liberties safeguarding privacy and "conscience and human dignity and freedom of expression as well." *Stanford v. Texas*, 379 U.S. 476 at 485 (1964) *quoting Frank v. Maryland*, 359 U.S. 360, 376 (dissenting opinion)

> "[W]hat history indispensably teaches is that the constitutional requirement that warrants must particularly describe the 'thing to be seized' is accorded the most scrupulous exactitude when the things' are books, and the basis for the seizure is the ideas in

which they contain. . . no less a standard could be faithful to First Amendment freedoms." *Stanford v. Texas*, 379 U.S. 476 at 485 (1964).

Here, not only did law enforcement deliberately, rather than inadvertently, discover files related to Muslim extremist speech, the files that were discovered were not recognizable as contraband. Law enforcement did not have probable cause to believe the files were evidence of a crime as required under the plain view doctrine. There is no law prohibiting the possession of such materials and by contrast, the First Amendment requires political and religious speech is protected regardless of how unpopular or offensive it may be. Accordingly, even if law enforcement had inadvertently discovered these files during the course of a proper search, law enforcement did not have probable cause to believe the files were evidence of a crime, therefore the files do not fall under the plain view exception and should be suppressed.

**D.    The Government's Retention of Copies of Files Outside the Scope of the 2012 Warrant Was Unreasonable and Unconstitutional.**

The retention of items outside the scope of the warrant for an unreasonable amount of time after data has been segregated is unconstitutional. *United States v. Comprehensive Drug Testing,* Inc., 621 F. 3d 1162 (9th Cir. 2010); *United States v. Tamura*, 694 F. 2d 591, 597 (1982). In *Tamura*, the government seized a large amount of documents, many of which were outside the scope of the warrant. *Tamura*, 694 F. 2d 591. The Court first outlined a procedure that should be used to segregate materials within the scope of the warrant from materials outside the scope of the warrant under circumstances where wholesale seizure is necessary. *Id.* The Court found the government failed to follow such a procedure and also found it improper that the government retained the materials that were outside the scope of the warrant for six months after locating the relevant documents. *Id.* at 597. The Court stated, "The Government's unnecessary delay in returning the master volumes appears to be an unreasonable and therefore unconstitutional manner of executing the warrant." *Id.* at 597.

In *Comprehensive Drug Testing*, the Court found that the government unconstitutionally failed to observe the "Tamura procedures" in segregating electronic data. *Comprehensive Drug Testing,* Inc., 621 F. 3d 1162.  The Court held that materials that the government illegally retained (files outside the scope of the warrant) were an improper seizure under the Fourth Amendment and those materials must be returned under Federal Rule of Criminal Procedure 41(g).  *Id.*  Finally, the Court held that where the government attempted to subpoena the same materials they had illegally seized and searched, quashing that subpoena was proper.  *Id.* at 1175.  The Court held that the government attempted to obtain an "unreasonable insurance policy" having seized materials unlawfully and then attempting to obtain the exact same materials through a subpoena.  "[T]he presence of substantial government misconduct and unlawful seizure of evidence . . . is quite properly taken into account when determining whether a subpoena is unreasonable."  *Id.* at 1175.  On these grounds, the Court affirmed quashing of the subpoena stating:

> "In doing so, we emphasize  that, while the government is free to pursue warrants, subpoenas and other investigatory tools, and may do so in whichever judicial district is appropriate in light of the location of the information sought, it must fully disclose to each judicial officer prior efforts in other judicial forum to obtain the same or related information and what those efforts have achieved."

*Id*. at 1175.

Here, as in *Tamura*, the government's retention of copies of files outside the scope of the 2012 warrant constituted an unlawful seizure under the Fourth Amendment.  In *Tamura*, the Court found the where the government retained documents outside the scope of the warrant for six months after the relevant files had been segregated, this was unreasonable and unconstitutional.  Here, an agency that arguably should never have had the electronic evidence in the first place, retained copies of the entire hard drives containing files outside the scope of the 2012 warrant for nearly three years after the seizure of the computers.  As in *Comprehensive Drug Testing*, the government cannot cure this illegal seizure by attempting to

procure the same illegally seized materials by a warrant three years after the fact.  This is especially true, where the government did not inform the federal magistrate issuing the new warrant of the scope of the previous warrant and the government's subsequent conduct.

**III.    THE RECOVERY OF THE LENOVO LAPTOP ON SEPTEMBER 9, 2015 DOES NOT DISSIPATE THE TAINT OF THE PRIOR ILLEGAL PRETEXT SEARCH, THEREFORE EVIDENCE FLOWING FROM IT CONSTITUTES THE FRUIT OF THE POISONOUS TREE.**

While federal law enforcement obtained the Lenovo laptop a second time, three years after the search and seizure of the computers,  this cannot remedy that the data was seized illegally in bad faith.  "It is well settled that evidence seized during an unlawful search cannot constitute proof against the victim of the search." *United States v. Crews*, 502 F.3d 1130, 1135 (9th Cir. 2007) citing *Wong Sun v. United States*, 371 U.S. 471, 484 (U.S. 1963).   In determining whether evidence is "fruit of the poisonous tree", the question is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun v. United States*, 371 U.S. 471, 488.  The Court must consider three factors: (1) the temporal proximity of the illegal search and detention to the evidence obtained; (2) the presence of any intervening circumstances; and, "particularly," (3) the 'uprose and flagrancy' of the official misconduct.  The burden of showing admissibility rests on the prosecution. *See generally Taylor v. Alabama*, 457 U.S. 687, 690 (1982), *Dunaway v. New York* ,442 U.S. 200, 218 (1979); *Brown v. Illinois*, 422 U.S. 590, 603-04 (1975).

Additionally, the government appears to argue that this tainted evidence was obtained lawfully through an independent source.  However, this exception is unavailable if the illegal search prompted it to obtain information from another source.  Thus, the Government's focus on Mr. Abdul Kareem stems from its illegal search and cannot be cured.

Had federal law enforcement never engaged in the bad faith pretext search in July of 2012, they would not have cause to locate and seize the Lenovo laptop. This evidence has been obtained by the exploitation of the previous illegal search and should be suppressed as fruit of the poisonous tree.

## IV.    CONCLUSION

For the foregoing reasons Mr. Abdul Kareem respectfully requests that the Court suppress the evidence found on the Lenovo laptop and attached storage device.

RESPECTFULLY SUBMITTED this 12th day of November, 2015.

**MAYNARD CRONIN ERICKSON
CURRAN & REITER, P.L.C.**

By /s/Daniel D. Maynard
   Daniel D. Maynard
   3200 North Central Avenue, Suite 1800
   Phoenix, Arizona 85012
   Attorney for Defendant

**ORIGINAL** of the foregoing e-filed this 12th day of November, 2015 via ECF with:
Clerk of the Court
United States District Court
401 W. Washington
Phoenix, AZ 85003

**COPY** of the foregoing e-delivered this 12th day of November, 2015 via ECF to:

Kristen Brook
Joseph E. Koehler
US Attorneys Office
2 Renaissance Square
40 N. Central Ave., Ste. 1200
Phoenix, AZ 85004-4408
Attorneys for Plaintiff

 /s/Stacey Tanner